**HOLLAND v. NIX.**

No. 14918.

United States Court of Appeals
Fifth Circuit.

June 23, 1954.

**318**

Elmer J. Kelsey, Sp. Asst. Atty. Gen., H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Fred Rita, Sp. Assts. Atty. Gen., James W. Dorsey, U. S. Atty., Charles D. Read, Jr., Asst. U. S. Atty., Atlanta, Ga., for appellant.

Hal Lindsay, Atlanta, Ga., Shirley C. Boykin, Carrollton, Ga., for appellee.

Before HOLMES and STRUM, Circuit Judges, and THOMAS, District Judge.

THOMAS, District Judge.

Cecil Nix, appellee here, plaintiff below, sought and obtained from the district court a judgment against appellant, enjoining him from enforcing against any funds or properties of appellee certain assessments and warrants of distraint.

The assessments in question had been made against Nix by Holland as Director of Internal Revenue for the District of Georgia, upon the theory that Nix was "a transferee of a transferee" from his son-in-law, one Robert L. Archer, who owed the government considerable sums of money in taxes. At the time Nix filed his complaint, the government had levied on various properties owned by Nix, including his home and bank account, for the purpose of collecting the assessments made against Nix as transferee. The theory of the government was that Archer, to avoid payment of the assessments against him, had transferred certain properties to his wife, who, in turn, had transferred them to her father, Nix.

When the complaint came on for hearing on the order to show cause and on the motion of the government to dismiss for want of jurisdiction,[1] the attorneys for the government stated in open court

---

1. § 3653(b) Title 26 U.S.C.A. "Liability of transferee or fiduciary. No suit shall be maintained in any court for the purpose of restraining the assessment or collection of (1) the amount of the liability, at law or in equity, of a transferee of property of a taxpayer in respect of any income war-profits, excess-profits, or estate tax, * * *."

at the start of the hearing that it would be shown the transactions in question were fraudulent; however, the government introduced no testimony of any kind.

█ Upon full hearing, the evidence showed without dispute that over a long period of time prior to the issuance of the assessment against Archer, he had become indebted to the plaintiff Nix on account of various loans and other lawful, though, on the part of Archer, not commendable transactions. Certain written acknowledgments of this indebtedness had been given to Nix by Archer and his wife. Later, in some instances, Archer did make certain conveyances to his wife, who, in turn, made conveyances to her father, the plaintiff; but the district judge found these were executed, delivered, and recorded in good faith to secure an indebtedness incurred and acknowledged in writing long before any notice had been given to plaintiff of the claims by the government against Archer. Some of these conveyances purported to be warranty deeds, though it appeared from the evidence that they were not sales but had been given to secure loans. Since possession was not given pursuant to the deeds, it was permissible under Georgia law to show by parol testimony that the deeds were given as security. This testimony was produced and not denied.

There was no testimony to controvert the plaintiff's contention that he had taken these various deeds from his daughter in good faith to secure the indebtedness due him from his daughter and son-in-law; nor was it controverted that the security taken by the plaintiff was inadequate to repay him some $7,800 plus interest, which plaintiff claimed was still due and unpaid. The evidence further showed that the plaintiff himself did not owe the government any taxes whatsoever on his own account, though the lien against him as "transferee of a transferee" was in the sum of $33,-714.10.

Prior to the hearing, the Director had filed his motion to dismiss plaintiff's case, which motion the trial court overruled at the hearing on May 13, 1953. At this hearing the Director did not, as has been stated, put on any testimony, but stood on his motion to dismiss. The Director's sole defense was based upon Section 3653 of the Internal Revenue Code, to the effect that no suit shall be maintained in any court for the purpose of restraining the assessment or collection of taxes against a taxpayer or his transferee.

█ The Director now, as appellant here, insists that the trial court, upon denying the Director's motion to dismiss, proceeded to grant a final decree in favor of appellee without affording the Director an opportunity, as provided by Rule 12(a), Federal Rules of Civil Procedure, 28 U.S.C.A., to answer the complaint. As to this latter contention, we find no merit in it. The motion to dismiss was overruled in open court on May 13, 1953 (page 23 of the transcript); and immediately thereafter the court heard plaintiff's evidence on the show-cause order. When plaintiff rested his case, the attorney for the Director stated, "We have no testimony, Your Honor. We stand on our motion to dismiss, as before, and we don't think the plaintiffs have helped their cause at all by the testimony." (Page 73 of the transcript.)

The above statement of appellant's attorney clearly illustrates that the government at all times stood on its motion to dismiss as the defense of the Director to the action. Moreover, the final judgment in this matter was not entered by the district court until September 2, 1953. During the interval between May 13 and September 2, the government could have filed an answer, if it had chosen to do so.

█ We now turn to the main issue in this case: Is the appellee prohibited by Section 3653(b) of the Internal Revenue Code from obtaining the injunctive relief sought? We think not.

█ The district judge found, "there is no evidence in this case on behalf of the government to the effect that any of the conveyances of any of said properties to the plaintiff were fraudu-

lent, or that plaintiff herein is indebted to the government in any sum whatsoever as taxes, and there is no basis for sustaining any claim in behalf of the government for taxes as against the plaintiff herein, or any grounds for subjecting any properties of the plaintiff to any claims by the government for taxes." We agree. As was stated by the Supreme Court in Miller v. Standard Nut Margarine Company of Florida, 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422, and in subsequent decisions, Section 3653 [2] is general in its terms and should not be construed as abrogating the equitable principles which permit suits to restrain collection where the exaction is illegal (as we think here), or there exist special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisdiction. See also Shelton v. Gill, 4 Cir., 202 F.2d 503. It is our opinion that the trial court was correct and the judgment should be affirmed.

Affirmed.