William HILDEBRAND, Jr., Martin Bressler, and Heman Adams,

v.

UNITED STATES of America, Defendant,

v.

Levin WEST, Counterclaim Defendant.

Civ. No. 82–435.

United States District Court, D. New Jersey.

May 16, 1983.

Martin Bressler, So. Orange, N.J., for plaintiffs.

Terri E. Schapiro, U.S. Dept. of Justice, Tax Div., Washington, D.C., for defendant.

Larry A. Stempler, W. Orange, N.J., for counterclaim defendant Levin West.

SAROKIN, District Judge.

In a democratic society, the laws must be enforced uniformly. Selective enforcement is contrary to the equality of treatment that is guaranteed to all persons. However, these principles do not prohibit the reasoned exercise of discretion in determining who shall be and who shall not be prosecuted and what claims shall and shall not be pursued.

This matter portrays the government at its heartless, rigid, and Orwellian bureaucratic worst. The plaintiffs in this action were engaged in selfless, dedicated charitable activity. They gave of their time and themselves to assist those in need. They received no personal gain other than the satisfaction derived from their charitable endeavors.

The compassionate federal government, and particularly the well-known, warmhearted Internal Revenue Service, has chosen to reward them with personal liability for the nonpayment of withholding taxes. In addition to the primary claim for the substantial taxes due, plaintiffs have been required to incur and to pay substantial amounts for legal fees to reverse the liability imposed upon them for such taxes.

On September 15, 1980 a delegate of the Secretary of the Treasury made assessments, pursuant to Section 6672 of the Internal Revenue Code of 1954, and issued notices of assessments to, and made demands for payment upon William Hildebrand, Heman Adams and Martin Bressler. These assessments resulted from the alleged nonpayment of withholding taxes by the Friends of Clinton Hill (FCH) for a period in the 1970's when it was operating a neighborhood health center, a community center, and a day care center in Newark. Plaintiffs are three suburbanites who were members of FCH, a tax-exempt charitable corporation. They participated in the organization, devoting time, money, and business expertise, out of a desire to help the community improve its quality of life.

The IRS has assessed plaintiffs Hildebrand and Adams the sum of $55,081.25 each for withholding taxes purportedly unpaid for the third and fourth quarters of 1973, all of 1974, and the first three quarters of 1975. Plaintiff Bressler has been assessed for the first three quarters of 1975 in the amount of $12,468.48, plus interest. The assessments were based on a determination by the United States that they were persons responsible for collecting, accounting for and paying over the withholding taxes and FICA taxes for FCH during the periods of assessment, who willfully failed to collect, account for and pay over such taxes.

Plaintiffs Hildebrand and Adams each paid $900.00 to the IRS; plaintiff Bressler paid $300.00 to the IRS. Plaintiffs then commenced this action on February 16, 1982 for a refund of the amounts paid, an accounting of all employment taxes owed by FCH and for attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412. The United States filed a counterclaim against the plaintiffs for the balance of the taxes assessed. A counterclaim defendant, Levin West, was added, but is not involved in this motion.

Plaintiffs moved for summary judgment alleging that they were not in control of the financial decisions of the corporation, that they did not act willfully, that their actions are supported by reasonable cause, and that they were denied due process. They also seek attorneys' fees. Defendant opposes this motion, contending that there are material issues of fact that preclude the granting of summary judgment.

This court may only grant summary judgment if it appears that there are no genuine issues of material fact, and the party is entitled to judgment as a matter of law. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

*Control of the Corporation*

The assessments were made pursuant to 26 U.S.C. § 6672:

(a) General rule.—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

The term "person" is defined in section 6671(b):

(b) Person defined.—The term "person", as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

Plaintiffs claim that they are not persons with a duty to account for and pay over the taxes. They argue that they had no control over the actions of the corporation, for the decisions were made by the urban representatives on the corporation's board of trustees. They contend that neither the structure of the corporation, nor the climate of Newark and the community organization would have permitted it. Further, plaintiffs argue that they did not want control of the corporation. They contend that they had no actual control of decisions, although there were "paper formalities" indicating that they did have control, and they did render advice to the corporation.

The cases indicate that responsibility for penalties under section 6672 ("responsible persons") extends broadly to persons who exercised actual substantial control over the financial decisions of the corporation.

Nevertheless, the determination of who is a responsible person and whether the funds are in good faith paid on a preferred security are not matters to be determined either in a partial vacuum, filled only with legal theory, or solely on the basis of the paper relationships controlling stockholders create between themselves and the entities that are subject to their control. If individuals dominate a corporation, that relationship is relevant to whether they are "responsible persons" within the meaning of § 6672. We are concerned with actual control and economic reality, not paper facades.

*First National Bank in Palm Beach v. United States*, 591 F.2d 1143, 1149 (5th Cir.1979). "The key to liability under section 6672 is control of finances within the employer corporation: the power to control the decision-making process by which the employer corporation allocates funds to other creditors in preference to its withholding tax obliga-

tions." *Haffa v. United States,* 516 F.2d 931, 936 (7th Cir.1975).

The Courts have construed the statutory definition of a "person" to include all persons who are so connected with a corporation as to be "responsible" for paying the taxes. The teaching of the cases is that a "responsible person" is one who has or shares the "final word" as to what bills or creditors should or should not be paid, the word "final" meaning significant rather than exclusive control.

*Henderson v. Croom,* 403 F.Supp. 665, 666 (N.D.Ala.1975). Courts have looked to the particular facts of each case to determine whether a person is a "responsible person" within the meaning of the law. The factors considered have included the content of the corporate by-laws, the identities of individuals who held corporate offices, signed corporate tax returns, or had authority to sign checks for the corporation, the payment of other creditors instead of the United States, the identities of the individuals who had authority to hire and discharge employees, and the identities of the individuals who controlled the financial affairs of the corporation in general. *Datlof v. United States,* 252 F.Supp. 11, 32–3 (E.D.Pa.), *aff'd,* 370 F.2d 655 (3d Cir.), *cert. denied,* 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1966).

Plaintiffs have the burden of proving that they could not, as a matter of law, be found to be "responsible persons". Plaintiffs rely upon the fact that they were only three members of a twenty-one member board of trustees, consisting of fourteen urban members and seven suburban members. They argue that their votes did not control the Board of Trustees. Plaintiffs, by affidavit, state that their participation in the FCH was limited to giving advice, fund raising, and contribution of expertise. Their argument is summarized in paragraph 37 of Mr. Bressler's affidavit, as follows:

[I]t can be concluded that these Plaintiffs did not control the corporation during those periods that tax payments may not have been made (whenever that might be) because:

A. The climate of opinion in Newark did not permit such control

B. Plaintiffs did not want control

C. The Friends of Clinton Hill was structured in a manner so as to assure control by the urban community.

(Bressler Aff. ¶ 37).

Plaintiffs have also submitted the affidavit of Robert Curvin, a political scientist. They ask the court to take judicial notice of the political climate in Newark during the time periods involved in this case, and to conclude that plaintiffs did not control the FCH. The court cannot take such judicial notice. Mr. Curvin has expressed no personal knowledge of the decision-making process of FCH. Further, Rule 201, Federal Rules of Evidence, limits the use of judicial notice to adjudicative facts that are either generally known within the territorial jurisdiction of this court, or are capable of accurate and ready determination by references to sources whose accuracy cannot be reasonably questioned. The dynamics of decision-making of the FCH fits neither of these requirements.

■ The government submits that these plaintiffs were officers of the corporation. From May 1973 until October 1974 Bressler was Vice President, Adams was Treasurer, and Hildebrand was Secretary. From October 1974 until October 1975 Bressler was Assistant Treasurer and Adams was Secretary. A person who holds these corporate offices, with the authority to make disbursements, is presumptively a "responsible person" for purposes of section 6672. *Bolding v. United States,* 565 F.2d 663, 670 (Ct.Cl.1977). The government further submits that these plaintiffs all had authority to sign checks for the FCH. The government further submits that these plaintiffs participated in financial decisions, including decisions to pay other creditors, budget decisions, and decisions setting salaries. The government also submits that plaintiffs Bressler and Adams participated in discussions with the Internal Revenue Service concerning the tax liability of the FCH.

Plaintiffs have not, in connection with this motion, met the burden of proving that they are not "responsible persons" for purposes of section 6672. They all had some formal responsibility for the finances of the corporation. As to the argument that they did not have actual control of the finances, the proof submitted is not sufficient to grant summary judgment. Lacking is data describing how the financial decisions were actually made, and what roles plaintiffs actually played in these decisions. There are disputed factual issues to be resolved before a determination can be made regarding the actual control of the corporation's finances. Summary judgment must be denied on this issue.

*Willfulness*

Plaintiffs also argue that they are entitled to summary judgment because they did not act willfully. Section 6672 imposes a penalty upon those who "willfully" fail to pay over taxes withheld from the employees of the corporation. Willfulness, in this context, does not require an evil or improper motive; it requires "only that the failure to pay result from a voluntary, conscious and intentional payment to others before the government." *Wall v. United States,* 592 F.2d 154, 163 (3d Cir.1979). Willfulness can also be found when a person acts recklessly.

> The willfulness requirement of section 6672 is satisfied if the responsible person acts with a reckless disregard of a known risk that the trust funds may not be remitted to the Government such as by failing to correct mismanagement after being notified that the withholding taxes have not been duly remitted.

*Garsky v. United States,* 600 F.2d 86, 91 (7th Cir.1979).

Plaintiffs argue that they cannot be found to have acted willfully because they were not informed by the IRS of the precise amounts due until several years after they left the Board of Trustees of the FCH. They also argue that several depository payments made to a bank, and made to the IRS by the City of Newark were not credited to the FCH account. They further ar-

gue that the court should apply a "rule of reason" to find that they did not act "willfully" because a reasonably prudent person would have used any funds to keep the facilities open, and not to pay tax liabilities.

Plaintiffs concede for purposes of this motion that they were aware that some money was due to the IRS. The record shows substantial confusion about the exact sums that were due, and that several efforts were made to obtain this information. In *Brown v. United States,* 51 A.F.T.R.2d (P–H) ¶ 83–379 (N.D.Ill.1982) the court rejected the argument that the plaintiff did not act "willfully" because he did not know the extent or seriousness of the delinquency. "It is entirely irrelevant that he may not have known just how large the deficiencies were." *Id.* at page 83–545. The court found that plaintiff had acted willfully because his disregard of a known risk was reckless.

The record also contains two memorandums of meetings in which it is stated that IRS agents noted the possibility that no sums would be due after the accounts were sorted out. (Exhibits B13, H7). In *Monday v. United States,* 421 F.2d 1210 (7th Cir.), *cert. denied,* 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970), the court rejected an estoppel argument based on meetings with IRS agents that occurred subsequent to some liability periods. The court found that these meetings furnished no excuse for the earlier failure to collect and pay the taxes. *Id.* at 1217–8. The representations allegedly made by the IRS agents in this case in 1976 occurred after the periods of liability for which the penalties were assessed, and they similarly may provide no excuse for the earlier failure to pay.

Plaintiffs' affidavits indicate that decisions were made to use funds to keep the health center open and to pay creditors other than the United States.

> To remain open bills had to be paid to suppliers and the like. The center simply *could not* be closed so that funds could be garnered to pay withholding taxes, . . .

(Bressler Aff., ¶ 33) (emphasis in original). This is sufficient to present a factual ques-

tion as to whether these plaintiffs acted willfully.

Plaintiffs ask this court to read into the requirement of willfulness a defense of reasonable cause. Several courts have concluded that to act willfully a party must act without reasonable cause. The Third Circuit Court of Appeals has not decided this question. *Wall v. United States,* 592 F.2d 154, 163 (3d Cir.1979). The court there did decide that the failure to pay taxes in the hope that things would improve and the taxes could eventually be paid is not the kind of reasonable cause that the cases refer to. *Id.* The courts that have recognized such a defense have given it a limited scope.

> The term "reasonable cause" has been interpreted as advice by counsel under certain circumstances not to pay the withheld taxes as they became due. *Cash v. Campbell,* 346 F.2d 670, 672–673 (5 Cir.1965); advice of non-collection by attorney and tax collector, *Grey Line Co. v. Granquist,* 237 F.2d 390 (9 Cir.1956); advice by counsel that there was no tax liability, *Cross v. United States,* 204 F.Supp. 644–649 (E.D.Va.1962). The following have been held *not* to constitute "reasonable cause"; assumption ∙ that government would satisfy its tax claim out of another fund, *Cash v. Campbell,* 346 F.2d 670, 671 (5 Cir.1965); mere delegation of responsibility to another, *Lawrence v. United States,* 299 F.Supp. 187, 191 (N.D.Tex.1969); a presumption that the government will look elsewhere for its taxes, *Spiegel v. United States,* 65–2 U.S. Tax Cas. ¶ 9655 (N.D.Ga.1965); the expectation that financial condition of business will improve, *Paisner v. O'Connell,* 208 F.Supp. 397, 401 (D.R.I.1962). *See also Frazier v. United States,* 304 F.2d 528, 530 (5 Cir.1962).

*Newsome v. United States,* 431 F.2d 742, 748 n. 12 (5th Cir.1970).

Plaintiffs cite *United States v. Slattery,* 224 F.Supp. 214 (E.D.Pa.1963), aff'd per curiam, 333 F.2d 844 (3d Cir.1964). In that case the court found that a corporate officer did not willfully fail to pay over taxes. The officer learned of the deficiency ten days before a bankruptcy petition was filed. During the ten days the officer paid only those expenses arising in the normal course of business. Further, the amount of money owed to the IRS was approximately five times the total cash on hand of the corporation. The court found that the government had not sustained its burden of showing that the corporation had sufficient funds to pay the taxes. The court also applied a "reasonable cause" defense. The court distinguished the case from those where "defendants continued to operate their businesses over long periods of time and paid creditors ahead of the Government at times when there were funds sufficient to pay the taxes." The present case includes allegations of continued operations over long periods of time, and thus is unlike *Slattery.* The *Slattery* case preceded *Wall,* so its applicability of a "reasonable cause" defense is questionable.

■ Plaintiffs contend that they acted reasonably by keeping the health center open to provide needed health services, instead of closing down the center to pay taxes of an uncertain amount. This argument is close to the one rejected in *Wall.* In essence, plaintiffs argue that taxes were not paid but other creditors were paid in the hope that finances would improve and the taxes could eventually be paid. Assuming there is a "reasonable cause" defense to section 6672 liability, whether it should apply to this case and whether these plaintiffs acted willfully within the meaning of the statute must be resolved at trial.

*Presumption that Assessments are Correct*

■ Plaintiffs argue that the burden of proof of correctness of the assessments is on the IRS; and if the IRS cannot prove the accuracy of the assessments, they are entitled to summary judgment. The rule is that IRS assessments are usually presumed to be correct, and the burden is on the taxpayer to prove their inaccuracy. *Helvering v. Taylor,* 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935); *Datlof v. United States,* 252 F.Supp. 11, 32 (E.D.Pa.1966). Plaintiffs argue that the presumption fails in this case because of IRS confusion about the amounts actually due. A similar argument was rejected in *Goodman v. United*

*States*, 42 A.F.T.R.2d (P–H) ¶ 78–5154 (D.N. J.1978). The court rejected the argument that the assessment was not entitled to a presumption of correctness because it was made in an arbitrary and capricious manner. "An assessment which is fairly debatable or even incorrect in light of newly discovered or even withheld evidence does not offend due process where there is sufficient other evidence tending to give probable cause to believe that the person assessed was a responsible person." *Id.* at n. 6. Plaintiffs have not presented evidence sufficient to destroy the presumption of correctness of the assessments, and to entitle them to summary judgments.

*Due Process*

■ Plaintiffs further argue that they were denied due process because they were assessed without prior notice of the sum due. They contend that timely notice of the sums due would have resulted in timely payment by the corporation, and no subsequent liability of these individuals. Plaintiffs cite several cases but none of them involve tax assessments.

The government asserts that plaintiffs knew that some taxes were owed, even if they did not know the precise amounts owed. Further, plaintiffs' argument seems to conflict with their earlier position that the health center could not remain open unless monies were used to pay creditors other than the IRS. Plaintiffs have not demonstrated that they were denied due process by the notice that they received sufficiently to grant summary judgment on this ground.

*Attorneys' Fees*

Plaintiffs also move for an award of attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412. Because plaintiffs have not prevailed, they are not entitled to counsel fees at this time. This motion is denied without prejudice.

As stated at the outset, the court denies plaintiffs' motion for summary judgment with great reluctance. Humanitarian concerns should spare these plaintiffs not only the payment of the money claimed by the government, but also the anguish and expense of establishing that they are not and should not be held personally responsible for these debts. Although the law confers upon the government the right to pursue these claims, neither the public conscience nor policy mandates that it do so.

The court recognizes that its failure to grant summary judgment in this matter will add considerably to the financial burdens of the plaintiffs. The trial of this matter will be costly and time-consuming. No matter what the court's views of this litigation may be, it cannot ignore the standards imposed upon it in connection with a motion for summary judgment.

If there were an appropriate way to resolve this matter without the necessity of a trial and the emotional and financial expense incident thereto, the court would have done so. However, the dictates of the summary judgment rule preclude the granting of the relief sought by plaintiffs. It is unfortunate when honest acts of charity are punished and so many illegal acts of greed are not.

Counsel for the government is directed to submit an order in accordance with this opinion to the court.